IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ADAM SMITH | § | CASE NO: 07-30201 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION

Adam Smith ("Debtor") filed a chapter 13 petition on January 2, 2007. His wife did not join in the bankruptcy. As part of Debtor's plan, Debtor proposes to bifurcate Wells Fargo's secured claim on a 2005 Trailblazer. Wells Fargo objects to confirmation arguing that the claim should not be bifurcated because it falls within the paragraph following § 1325(a) (the "910 paragraph"). The parties filed briefs as to the applicability of the 910 paragraph, and the Court held a hearing on April 17, 2007. For the reasons set forth below, Wells Fargo's objection is overruled. The chapter 13 plan will be confirmed.

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. 1334(b). This is a core proceeding under 28 U.S.C. § 157.

*Analysis*

Under 11 U.S.C. § 506(a), if the collateral securing a claim is valued at an amount less than the debt, the claim is divided into an unsecured and secured portion.[1] This bifurcation may be enforced over the creditor's objection. *In re DeSardi*, 340 B.R. 790, 811 (Bankr. S.D. Tex.

---

[1] Section 506 provides that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1)

1

2006).

The general rule is that a claim will be secured only as to the present value of the claim as of the petition date. *See In re Fleming*, 339 B.R. 716, 721 (Bkrtcy. E.D. Mo. 2006). This right, however, is limited by the 910 paragraph. The 910 paragraph provides:

> [S]ection 506 shall not apply to a claim . . . if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for the debt consists of a motor vehicle . . . acquired for the *personal use of the debtor* . . .

11 U.S.C. § 1325(a)(*)[2] (emphasis added). The ramifications of this paragraph have been a source of confusion for bankruptcy courts. Today, this Court must address the contested issue of how to construe the phrase "personal use of the debtor." 11 U.S.C. § 1325(a)(*).

The issue involves Debtor's 2005 Trailblazer. Debtor argues that although this vehicle was purchased within 910 days of his bankruptcy filing, the vehicle was purchased solely for use by his non-debtor wife. Therefore, Debtor asserts, the vehicle is not for his personal use.

A hearing was held on April 17, 2007. The parties testified as to the purchase and use of the Trailblazer. Based on the parties' testimony, it is exceedingly clear that although Mr. Smith is named as the purchaser on the vehicle, only Mrs. Smith uses the Trailblazer.

Mrs. Smith testified that when purchasing the Trailblazer, she visited the dealership twice without Debtor before the purchase and sale documents were signed. She alone decided on the model and color of the Trailblazer and she alone negotiated the terms of the note. Mr. Smith accompanied Mrs. Smith on her third visit to the dealership for two limited reasons: (1) Mrs. Smith was trading in a Ford Taurus[3] which was owned by Mr. Smith and thus necessitated his

---

[2] Although this particular subsection of the code appears after § 1325(a)(9) and prior to § 1325(b), it has no specific designation. Accordingly, many courts refer to this section as the "hanging paragraph" and cite it as § 1325(a)(*).

[3] Mr. and Mrs. Smith testified that Mrs. Smith alone drove the Taurus.

signature on the trade-in documents; and (2) Mrs. Smith's credit did not enable her to purchase the Trailblazer. To overcome the credit obstacle and at the request of the dealer, Mr. Smith signed the sale documents.

Since the date of purchase, payments on the Trailblazer have been made by Mrs. Smith from her separate checking account into which she deposits her paycheck. Mr. Smith maintains a separate account into which he deposits his paycheck. Mr. Smith testified that he has never driven the Trailblazer nor does he carry a key to the vehicle.

Mr. Smith testified that he drives a Chevrolet Impala. He pays for the Impala out of his separate account. Mrs. Smith is a co-signer on the Impala. By having Mrs. Smith co-sign the note, Debtor claims he was able to secure better financing on the vehicle. Mr. and Mrs. Smith both testified that Mrs. Smith does not have a key to the Impala and has never driven or ridden in the Impala.

Testimony showed that the only financial involvement Debtor has with the Trailblazer is that Debtor pays for insurance on the Impala and the Trailblazer with both Mr. and Mrs. Smith insured on both vehicles.

Although the Smiths are married, they do not share their vehicles or their finances in the manner that is typical for most American couples.

It is clear that the parties intended for Mrs. Smith solely to physically utilize and pay for the Trailblazer at the time of the purchase. The Court, however, has one concern as to whether this finding is enough to remove the Trailblazer from the 910 paragraph: Mrs. Smith also uses her vehicle to care for the Smith's three year-old grandson.

Although Mrs. Smith considers herself the child's mother, the grandson is biologically Mr. Smith's and not Mrs. Smith's. Mrs. Smith testified that the care and support of the child

3

were mostly hers alone.  The majority of the child's expenses are paid for out of her separate checking account, and she has the responsibility of taking the child to and from daycare and transporting the child in the Trailblazer which is equipped with a child's car-seat.

This Court is, therefore, faced with the question of whether "personal use of the debtor" includes use by his spouse that is for the debtor's benefit.  The specific issue is whether the use of the car to care for the debtor's biological grandchild is sufficient to invoke the 910 paragraph.

*Personal or Business Use*

Several Courts have grappled with the meaning of "personal use" in the context of personal as opposed to business use.  *See e.g., In re Solis,* 356 B.R. 398 (Bankr. S.D. Tex. 2006); *In re White,* 352 B.R. 633 (Bankr. E.D. La. 2006);  *In re Lowder,* No. 05-44802, 2006 WL 1794737 (Bankr. D. Kan., June 28, 2006); *In re Wilson,* No. 06-40637, 2006 WL 3512921 (Bankr. D. Kan., Dec.5, 2006).  With the possible exception of the use of the vehicle to care for the grandson, Mrs. Smith's use is clearly personal to her and not to her husband—she uses the vehicle for transportation to and from work and for recreational and personal activities.  Many of the business versus personal use cases have held that when a debtor travels to and from work in the vehicle only, such use is considered personal because the travel provides monetary benefits to the debtor and debtor's family and such benefits are personal to debtor and his family.  *E.g In re Joseph*, No. 06-50655, 2007 WL 950267, *3 (Bankr. W.D. La., Mar. 20, 2007) (citing *In re Lowder*, 2006 WL 1794737, at *4; *In re White*, 352 B.R. at 641; *In re Solis*, 356 B.R. at 410; *In re Wilson*, 2006 WL 3512921, at *3).

However, there are a line of cases holding the opposite.  *In re Johnson*, 350 B.R. 712 (Bankr. W.D. La. 2006) (applying totality of circumstances test in evaluating the intent of debtor's use of the vehicle and concluding if the vehicle enables debtor to make a "significant

4

contribution to the gross income of the family unit, it is not acquired for the personal use of the debtor."); *In re Hill*, 352 B.R. 69 (Bankr. W.D. La. 2006) (same); *In re Martinez*, No. 06-10124, 2007 WL 744643, *2 (Bankr. S.D. Tex., Mar. 12, 2007) (finding if vehicle is used to make a "significant contribution to the gross income of the family unit . . . the vehicle was not 'acquired for the personal use' of the debtor.").

On this issue, this Court agrees with the cases finding that transportation to and from work may be considered personal.  As stated in *In re Solis*, the totality of circumstances should be evaluated to determine whether a vehicle was "acquired with the intent of providing personal benefits for the debtor(s)." *In re Solis*, 356 B.R. at 410.  The Court in *Solis* noted that a debtor makes a personal decision when he chooses to use his vehicle, as opposed to some other form of transportation, to commute to and from his employment.  Simply because the vehicle satisfies the purpose of providing income, it does not exclude the vehicle from satisfying personal needs. *Id.* In addition, this Court finds that the monetary benefits provided to the debtor and his family from the debtor's use of the vehicle as transportation to and from his place of employment may be personal to the debtor and his family. *See e.g. In re Joseph*, 2007 WL 950257 at *3.

As a result of this conclusion, the Court must consider a related issue.  If the non-debtor spouse uses a vehicle to provide income[4] for the family and care for the family's child, should such use be considered personal to the debtor?

---

[4] The Court notes that testimony at the hearing was inconclusive as to how the Smiths divided household expenses. Initially, Mr. Smith testified he took care of the traditional "provider" type of expenses such as lights, water, gas, rent on the home, the Impala car payment, and insurance on both cars.  Further testimony, however, was that Mrs. Smith paid for the child's needs and would contribute to the household when necessary.  In addition, her income is included in maintaining the chapter 13 plan.

5

*Personal, Household or Family Use*

A similar issue has been evaluated by several courts seeking to determine whether "personal" should include general family or household use. The principle that "it is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another"[5] has prompted some courts to determine that "personal use" is a phrase separate and distinct from the phrase "personal, family or household use" as used in other sections of the code, such as § 722. *See In re Jackson*, 338 B.R. 923, 925-26 (Bankr. M.D. Ga. 2006); *In re Press*, No. 06-10978, 2006 WL 2734335 (Bankr. S.D. Fla., July 26, 2006) (finding "personal use" to be limited and refusing to interpret § 1325(a)(*) to include family or household use).

The court in *In re Jackson* evaluated vehicle use by a non-debtor spouse. *In re Jackson*, 338 B.R. 923. Debtor purchased a vehicle, otherwise falling under § 1325(a)(*), but used mostly by his non-debtor wife. *Id.* at 924-25. The Court looked to the definition of "personal" and found that personal was defined to be a "particular person; private" and had Congress intended to include family or household in the anti-cram down provision, it would have done so. *Id.* (citing AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000)). Finding personal could never include family and household use, the Court allowed Debtor to cram-down the debt. *Id.*

Judge Parker recently evaluated "personal use" where the debtor worked off-shore and attempted to cram-down a lien on a vehicle driven almost exclusively by his non-debtor spouse. *In re Adaway*, No. 10273, 2007 WL 1174882, *2 (Bankr. E.D. Tex., Apr. 10, 2007). The Court rejected the strict theory that "personal use" and "personal, family, and household use" must be mutually exclusive, and determined that "the personal use requirement is met and the §

---

[5] *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994)

1325(a)(*) limitation is triggered if the personal use of a vehicle is intended at acquisition to be significant and material." *Id.* at *3 (citing *In re Solis*, 356 B.R. at 409). Under the totality of the circumstances, the Court concluded that when acquired, Debtor did not intend to personally use the vehicle in a significant and material manner. *Id.* at *4. The vehicle was intended to be used by the non-debtor spouse, therefore, Debtor could cram-down the lien in his chapter 13 plan. *Id.*

These cases have evaluated the meaning of personal use in the context of excluding personal from family or household use. There is little case law directly addressing whether personal use can include benefit provided to the debtor by the non-debtor spouse's activities. *In re Solis* briefly addressed this issue and stated that "[t]his Court will test 'use' by testing 'for whose benefit' the vehicle was intended do be used, not solely by considering who was intended to manipulate the controls." *In re Solis*, 356 B.R. at 410-11. The *Solis* Court explained that if a husband drives a vehicle to run an errand for his wife, the husband would be "using the vehicle for the wife." *Id.*

This Court agrees with *Solis* and finds that the totality of circumstances test must be applied to determine when the non-debtor spouse's use of a vehicle is personal to the debtor.[6] In considering the principles that (1) income from a debtor may be personal to his family, and (2) "use" is best tested by determining "for whose benefit" the vehicle was intended to be used, the Court finds there can be no bright line test for what vehicles fall under the 910 paragraph.

Mrs. Smith chose the vehicle, makes payments on the vehicle out her separate account, and exclusively uses the vehicle for her work transportation and personal needs. Mr. Smith does

---

[6] As the Fourth Circuit stated in evaluating § 722:

> The terms "personal," "family," and "household use," describe three different categories of goods, and although these categories undoubtedly overlap to some extent-for example, a television set may be used by the debtor personally and by family members-there are some items of personal property, such as clothing, that only the debtor typically would use.

*Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 747 (4th Cir. 1996).

not have key to the vehicle and never drives the vehicle. Likewise, Mrs. Smith does not have access to a key to Mr. Smith's vehicle and has never ridden in his vehicle. These facts are unusual in that rarely will a court be confronted with testimony which so clearly shows the non-debtor spouse is solely responsible for and in control and care of the questioned vehicle.

Two factors may weigh in favor of imputing Mrs. Smith's use of the vehicle to Debtor: (1) Mrs. Smith uses the vehicle to care for Mr. Smith's biological grandson, and (2) Mrs. Smith, at times, contributes some of her income to the household expenses. In view of the totality of circumstances, the Court finds these facts insufficient to override Mrs. Smith's otherwise exclusive use of the vehicle. The Court concludes that Mrs. Smith does not consider herself caring for Mr. Smith's biological grandson, but rather caring for her own grandson. Such care seems likely to continue regardless of Mr. Smith's presence in the household. Additionally, while the testimony was inconclusive as to an exact amount Mrs. Smith contributed to the household, it was clear that Mr. Smith is the main provider and Mrs. Smith only contributes when necessary. Mrs. Smith's contributions are insufficient to establish that Mrs. Smith's personal use of the vehicle is personal to Mr. Smith. The Court, therefore, finds that the Trailblazer is not for the "personal use of the debtor," and is not subject to the 910 paragraph. 11 U.S.C. § 1325(a)(*).

*Debtor's Signature on Sales Contract*

Wells Fargo also argues that by simply signing the sales contract and checking the box for personal, family or household use, as opposed to the box for business use, Debtor not only demonstrated the intent to use the vehicle for personal use, but also "subjected himself to Wells Fargo [while] Mrs. Smith has not." Brief of Wells Fargo p.3. The Court finds this argument

unsupported by statutory or common law.[7]

Initially, it appears that Mr. Smith's representation in the contract was accurate. The contract did *not* include a statement that the vehicle was for Mr. Smith's personal use. Rather, it contained a disjunctive statement that it was for personal, family OR household use. The testimony is unambiguous that the vehicle was for family or household use.

Wells Fargo's remedies are not limited to recovery of the vehicle. Indeed, the law imposes personal liability on Mrs. Smith for payment to Wells Fargo.

Under Texas law, it is well-settled that a married person can bind his or her spouse to a contract for "necessaries" even without the non-signing spouse's signature. TEX. FAM. CODE ANN. § 3.201(a)(2) (2007). Automobiles are generally classified as necessaries. 39 TEX. JUR. 3D *Family Law* § 105 (2007) (citing *Walling v. Hannig*, 11 S.W. 547 (1889)) (Necessaries are considered "things as are suitable to the station in life of the spouse and children, insofar as the ability of the parties will permit.").

When Mr. Smith signed the contract, Mrs. Smith also became liable for the debt on the Trailblazer. This liability reaches not only to the community property of both spouses, but it also imposes personal liability for the debt on Mrs. Smith. *See In re Green*, Nos. 06-11761, 06-11762, 2007 WL 1093791 (Bankr. W.D. Tex., Apr. 9, 2007) (citing TEX. FAM. CODE ANN. § 3.201(a) (Vernon 2007)). The Texas Family Code is clear. It states "[a] person is *personally liable* for the acts of the person's spouse [if] . . . the spouse incurs a debt for necessaries." TEX. FAM. CODE ANN. § 3.201(a)(2) (Vernon 2007) (emphasis added). Wells Fargo may look to Mrs. Smith, separate from Mr. Smith, for satisfaction of the debt.

---

[7] While some courts have considered the importance of whose signature appears on the contract, such signature is generally considered merely one factor in "personal use" evaluations. *See e.g. In re Joseph,* 2007 WL 950267 at *3 (citing *In re Wilson*, 2006WL 3512921 at *3-4).

By confining § 1325(a)(*) to the debtor spouse only, Congress did not leave secured lenders without recourse for their debt. Cramming down the debt under Mr. Smith's bankruptcy plan does not alter the fact that Mrs. Smith remains liable for this debt.

*Conclusion*

Section 1325(a)(*) does not control Wells Fargo's treatment in Mr. Smith's chapter 13 plan. Wells Fargo's objection is overruled. A separate order has been issued confirming the plan.

Signed at Houston, Texas, on May 29, 2007.

_____
MARVIN ISGUR
United States Bankruptcy Judge